IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD STANKOWSKI,                    :        CIVIL ACTION NO. **3:CV-06-1582**
                                      :
                 Plaintiff            :        (Judge Munley)
                                      :
        v.                            :        (Magistrate Judge Blewitt)
                                      :
THOMAS F. FARLEY, et al.,             :
                                      :
                 Defendants           :

**REPORT AND RECOMMENDATION**

**I. Background.**

Plaintiff, Donald Stankowski,  filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on August 15, 2006.[1]  (Doc. 1).  The Plaintiff, who is proceeding *pro se*, also filed an application for leave to proceed *in forma pauperis*.  (Doc. 2).[2]  The Plaintiff was not a prisoner at the time of filing this case, but he complains about alleged actions taken by the Defendants which resulted, in part, in his past confinement at Pike County Correctional Facility ("PCCF").[3]  As noted, Plaintiff also complains about conditions of his confinement at PCCF.  Jurisdiction of this Court is found at 28

---

[1]Plaintiff is complaining, in part, about prison conditions during his approximate 12-month period of incarceration at PCCF from about January 22, 2004, date of sentencing, to February 24, 2005, release on parole.  (Doc. 1, pp. 10-11).  Plaintiff currently resides in the Middle District of Pennsylvania.

[2]Since we find Plaintiff's action to be subject to preliminary dismissal, we shall recommend that his Motion for *in forma pauperis* be denied as moot.

[3]In his  pleading, Plaintiff indicates that he was released to parole on February 24, 2005, and that he now resides in Honesdale, Pennsylvania.   (Doc. 1, p. 2, p. 20).

U.S.C. §§ 1331 & 1343(a).[4]

We now give preliminarily consideration to the Plaintiff's Complaint pursuant to 28 U.S.C. §1915, the Prison Litigation Reform Act of 1995 ("PLRA").[5]   The PLRA obligates the Court to engage in a screening process when a person wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6]   Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

Despite the fact that Plaintiff is no longer a prisoner, §1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners.   *See Grayson v. Mayview State Hosp.*, 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino*, Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4.

---

[4]For purposes of clarity, we refer to the page numbers in Plaintiff's Complaint by typed page numbers inserted by the Clerk of Court on Plaintiff's Complaint, and not his handwritten page numbers.

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[6] The Plaintiff, as stated, filed a Motion to proceed *in forma pauperis*.   (Doc. 2).

We shall recommended that all nine (9) Defendants be dismissed for failure to state a claim against them pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

## II.  Motion to Dismiss Standard.

When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993);  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).[7]

---

[7]Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

## IV.  Allegations of Plaintiff's Complaint.

The Defendants are as follows:

Thomas F. Farley, Esquire, Pike County Public Defender;

Brian Davis, Probation Officer, Pike County Probation Office ("PO");

Craig Lowe, PCCF Warden;

PrimeCare Medical, Inc.;

4

Kathleen Cronin, Administrator, PCCF;

Joseph F. Kameen, Presiding Judge, Court of Common Pleas of Pike County;

Paul Thiel, State Parole Officer;

Lt. Williams, Pike County Correctional Facility; and

Raymond J. Tonkin, Assistant District Attorney ("ADA"), Pike County.

(Doc. 1, p. 6).

Plaintiff alleges that Defendant Farley, his Public Defender, "entered into a chain, inchoate, conspiracy with the so-named co-Defendants ... to induce the Plaintiff ... into a wanton discriminatory restraint of a misdemeanor charge by the induction of an excessive and illegal court decision entered against the Plaintiff, denying the Plaintiff of his freedom and liberty as guaranteed under ... due process of law."  (Doc. 1, pp. 4, 7).   Plaintiff also claims that Defendant Farley conspired with the other Defendants by use of lies and deceit to deprive Plaintiff of his freedom, and that he refused to do any factual investigation into the charges against Plaintiff.  Plaintiff claims that Defendant Farley only induced statements of guilt against him by repeating to Plaintiff "you're guilty."  (*Id.*, p. 7).   Plaintiff alleges that Defendant Farley committed malpractice by failing to present any defenses in his case.  Plaintiff states that Defendant Farley deliberately disregarded his requests to file any appeals in his criminal case.  Plaintiff states that Defendant Farley advised him that he could only file a PCRA petition, but Plaintiff claims that he had already filed two such petitions, and that Defendant Judge Kameen never responded to them.

Plaintiff claims that Defendant Judge Kameen denied or failed to address various motions he filed in his criminal case.  (*Id.*, p. 8).

Plaintiff claims that Defendant Farley told Plaintiff not to read his prepared statement at his sentencing on January 22, 2004, and that Judge Kameen denied him the opportunity to complete his statements. (*Id.*, p. 9). Plaintiff also claims that Defendant Farley failed to appear at his first sentencing date in December 2003 without explanation, and states that Defendant showed neglect and lack of consideration to the court and to him. (*Id.*). Plaintiff claims that Defendant Farley "instigated the Plaintiff into a false conception of the amount of time the Plaintiff would have to remain incarcerated." (*Id.*, p. 10). Plaintiff claims that Defendant Farley told him that Defendant Probation Officer Davis recommended a 9-month prison sentence for Plaintiff and that he [Farley] saved Plaintiff 5 months off of the probation officer's recommendation. (*Id.*). Plaintiff states that he then served a 13 ½ months sentence of incarceration. Plaintiff states that his counsel failed to state his plea bargain in open court after it was supposedly incorporated into the record.

Plaintiff states that at his sentencing hearing on January 22, 2004,[8] Defendant Farley, along with Defendant Assistant District Attorney Tonkin and Defendant Judge Kameen, had a side bar conference, and Farley then told Plaintiff that the Judge agreed to give him a 90-days sentence and time served credit for 13 days. Plaintiff states that he then agreed to plead guilty based on the assumption that he would not be incarcerated more than 90 days. (*Id.*, p. 10).

---

[8]Under the two-year statute of limitations applicable to § 1983 actions, portions of the Plaintiff's case may be untimely if some of his causes of action are construed as commencing in January 2004, with his sentencing hearing. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989) (§1983 claims are subject to two-year statute of limitations). We note that Plaintiff's claims largely occurred in the early months of 2004. Since the statute of limitations is an affirmative defense that must be raised by Defendants, we make no determination on this issue at this time.

Plaintiff states that Defendant Farley then deceived him into signing the guilty plea colloquy without giving him a chance to read it all. Plaintiff states that Defendant Farley committed malpractice by not sending him a signed copy of the colloquy. Plaintiff also states Defendant Farley committed malpractice, since the colloquy indicated "N/A" as to whether his sentence would include probation/parole, and since he was placed on parole from June 4, 2004 until January 6, 2005. (*Id.*, p. 11). Plaintiff states that he remained incarcerated despite being granted parole and that he was not released until February 24, 2005 due to the imposition of a 3-month in-patient sanction against him. (*Id.*).

Plaintiff claims that Defendant Farley failed to advise him that his previous bad acts would be used against him with respect to his sentencing on the non-related misdemeanor charge to which he pled guilty. (*Id.*, p. 12). Plaintiff claims that the Public Defender was not eligible to represent him with respect to his vehicle offense, and that Defendant Farley failed to file an appeal of his sentence for him in February 2004.[9]

Plaintiff claims that the Defendant Judge Kameen did not properly explain why his bail release was not granted, and states that he did not receive a copy of the court's order denying him bail until January 2005. Plaintiff states that even though the judge denied him bail, he was not a threat to the community. (*Id.*).

Plaintiff claims that Defendant Farley violated the attorney/client privilege, since information that was to remain sealed was divulged and used against him at the pre-sentencing hearing

---

[9]*See* note #8, *supra.*

(meeting) of Defendant PO Davis.  (*Id.*, p. 13).   Plaintiff claims that he was denied access and review of several documents by Defendants Farley, Defendant ADA Tonkin, PO Davis, Judge Kameen, and   Defendant Lt. Williams, including discovery reports, criminal history report, probation pre-sentence report, and he claims that Defendant Judge Kameen denied him the transcript of his court hearing.  (*Id.*).

Plaintiff then details his allegations against the other specific Defendants.  Plaintiff states that Defendant ADA Tonkin conspired with the other Defendants by denying him access and review of pertinent documents vital to his defense.  (*Id.*, p. 14).  Plaintiff states that the plea agreement was not honored, was not stated in open court (even though it was incorporated into the record), and was not submitted to Plaintiff or his counsel.

Plaintiff states that Defendant PO Davis, during the pre-sentence conference, tried to get Plaintiff to admit he committed other crimes not relevant to Plaintiff's case at issue and not committed by Plaintiff.  Plaintiff claims that Defendant Davis, in his pre-sentence report, used other bad acts of Plaintiff that were not relevant to Plaintiff's pending misdemeanor charge.  Plaintiff claims that Defendant Davis denied him access and review of his pre-sentence report.  (*Id.*). Further, Plaintiff claims that Defendant Davis incorporated bias and malicious judgments of his character in wanton negligence at to the truth of them.  (*Id.*, p. 15).

Plaintiff states that Defendant Judge Kameen did not state any sentence or sanction against him in open court on January 22, 2004.[10]  Plaintiff claims that the Judge did not discuss fines, parole

---

[10]*See* note #8, *supra*.

and program attendance with Plaintiff in open court.  Plaintiff claims that his sentence imposed by

Judge Kameen was illegal and excessive.[11]  Plaintiff claims that Judge Kameen did not submit a

written statement for deviating from the sentencing guidelines and did not state the reasons in open

court.  (*Id.*).  Plaintiff claims that Defendant Kameen refused to address Plaintiff's motions that he

---

[11]Insofar as Plaintiff is seeking to challenge his sentence, he would have had to do this *via* a petition for writ of habeas corpus under 28 U.S.C. § 2254.  However, since Plaintiff admits that he is no longer in custody under his January 2004 sentence nor on parole, he can no longer file a habeas petition.

The Third Circuit Court of Appeals in *Defoy v. McCullough*, 393 F.3d 439, 441-442 (3d Cir. 2005), stated as follows:

> A prisoner may seek federal habeas relief only if he is in custody in violation of the constitution or federal law.  28 U.S.C. § 2254(a).  Moreover, a petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition.  *Lane v. Williams*, 455 U.S. 624, 631 (1982).  This general principle derives from the case or controversy requirement of Article II of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate . . .  the parties must continue to have a personal stake in the outcome of the lawsuit."  *Lewis v. Cont'l Bank Corp.*, 494 U .S. 472, 477-78 (1990) (internal citations and quotations omitted).  In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Id.* at 477; *see also Maleng v. Cook*, 490 U.S. 488, 492 (1989) (holding that habeas petitioner does not remain "in custody" after the sentence imposed has fully expired merely because of the possibility that the prior conviction will be used to enhance sentences imposed for any subsequent crimes of which he is convicted); *United States v. Romera-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) (holding that prisoner's motion to vacate his conviction was not mooted when he was released from custody, where he faced potential deportation as a collateral consequence of conviction.

filed.  (*Id.*, p. 16).

Plaintiff states that Defendant Warden Craig at PCCF misused his authority and denied Plaintiff proper medical treatment, charged exorbitant fees for Plaintiff's legal mailings, and denied Plaintiff release into the drug and alcohol program because the prison's medical department allowed Plaintiff to receive a narcotic, which caused Plaintiff an additional 9 months confinement since he was not accepted into the program due to the fact he was not drug free.  (*Id.*).  Plaintiff claims that he was not accepted into the drug/alcohol program since he was informed that he was not suitable for it, and that Defendant Craig did not honor his indigent status.

Plaintiff claims that Defendant Prime Care Medical, Inc. ("PMC"), allowed unprofessional and inadequate treatment to him and charged him a fee for an insurance referral to see a doctor. Plaintiff claims that the attending doctor refused to let him go the hospital when he was in excruciating pain due to sciatic spasms.  (*Id.*, p. 17).  Plaintiff alleges that two non-Defendant prison staff committed him to segregation because he was complaining of pain and that the segregation was cold and had a leaking sink.[12]

---

[12]Notwithstanding the fact that the stated claims of Plaintiff about placement into the Segregation unit at the prison was not made against any of our Defendants, it is clear that Plaintiff had no liberty interest in remaining in the general population at the prison and that his placement into segregation did not amount to a Constitutional violation.  As the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that the failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

Plaintiff also states that PMC nurses denied him proper medical care and told him he had to see a doctor for a band-aid for his cut fingers. (*Id*.).[13]

Plaintiff claims that Defendant Cronin, PCCF Administration Office, "Incorporated excessive and unreasonable fees regarding the mailings of Plaintiff's appeal." Plaintiff claims that Defendant Cronin's actions were instituted to prevent him from filing his appeal by gouging and enhancing the actual cost of his legal mailings. Interestingly, Plaintiff admits that he filed several motions with the sentencing court *pro se*. (*Id*., pp. 8-9). Plaintiff also admits that he filed an appeal of his sentence on February 17, 2004, and that it was docketed on February 20, 2004. Plaintiff admits that his appeal is still pending. (*Id*., p. 12). Thus, Plaintiff's own admissions belie his denial of access to court claim against Defendant Cronin. Even though Plaintiff claims that the refusal of Defendant Cronin to charge "actual fees" and that his brief in support of his appeal was "left stagnant" and that his appeal is still not addressed by the court, Plaintiff fails to allege an actual injury since his appeal was admittedly filed and not dismissed for failure to file a brief. (*Id*., p. 18).[14]

---

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id*. at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id*.

[13]As discussed below, Defendant PMC is not a person under § 1983.

[14]It would seem that Plaintiff's appeal of his sentence would now be moot despite his claim that it is still pending since he admits that he has now fully served his sentence.

Plaintiff claims that Defendant Lt. Williams, head of Administration at PCCF, denied him access to court documents relevant to his charges and case he requested under the Freedom of Information Act ("FOIA") which were sent by the court to the prison. (*Id.*, p. 18). Plaintiff also claims that Defendant Williams denied him an explanation as to the reason why he was denied access to the drug/alcohol program, and that when he was granted parole on June 4, 2004, and he was eligible to enter into a program, the only reason for denial that he was given was that he was unsuitable for the program. As a result, Plaintiff claims that he had to spend an extra 9 months incarceration. (*Id.*). Plaintiff states that he was not informed that he was denied acceptance into the drug/alcohol program because medical staff gave him a narcotic which precluded his participation in the program. Plaintiff claims that this information was not known to him until February 2005. (*Id.*, p. 19).

Finally, Plaintiff claims that Defendant State Parole Agent Thiel knowingly denied him access to a rehabilitation facility, which he was granted on June 4, 2004 by the Pennsylvania State Parole Board, and claims that he "was kept incognito as to the actual reason for denial of the Plaintiff for entrance into the program." (*Id.*, p. 19). Plaintiff states that this action was "conspired by Mr. Thiel and Lt. Williams, no facilities for disabled at program." (*Id.*).

At the end of his Statement of Claims, Plaintiff notes that Defendant Warden Lowe is responsible for the conduct of the staff at PCCF. (*Id.*). However, the law is well-settled that *respondeat superior* is not a basis to hold any supervisory official liable in a § 1983 action. *See Rode, supra.*

12

As relief in his present Complaint, the Plaintiff requests compensatory and punitive damages. (Doc. 1, p. 4, ¶ V. Relief). Plaintiff also request damages for "pain and suffering, mental anguish and depression." (Doc. 1, p. 4, ¶ V.).[15]

## V. Discussion.

We shall discuss Plaintiff's claims *seriatim,* first with respect to his public defender, the ADA, the PO's and the sentencing judge, and then with respect to the PCCF Defendants.[16]

---

[15]The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury. Here, the Plaintiff does not claim a physical injury. Thus, a claim for damages for mental anguish is precluded. *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251( 3d Cir. 2000); *Oriakhi v. Wood*, 2006 WL 859543 (M.D. Pa.).

A majority of Circuits, including the Third Circuit, have held that 42 U.S.C. § 1997e(e) applies to claims in which a Plaintiff alleges constitutional violations so that the Plaintiff cannot recover compensatory damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury. *See Fontroy v. Owens*, 150 F. 3d 239, 244 (3d Cir. 1998) (Federal law does not provide inmates, who suffer no present physical injury, a cause of action for damages for emotional distress allegedly caused by exposure to asbestos); *Thompson v. Carter*, 284 F. 3d 411, 417 (2d Cir. 2002); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (applying § 1997e(e) to an Eighth Amendment claim where Plaintiff made no showing of physical injury); *Allah, 226* F. 3d at 250 (rejecting Plaintiff's argument that his First Amendment claim, on which he sought to recover compensatory damages without alleging a physical injury, was not subject to § 1997e(e)); and *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (applying § 1997e(e) to bar damages for emotional suffering resulting from alleged Eighth Amendment violation).

In this case, as stated, Plaintiff has not alleged physical injury. Thus, Plaintiff's damages claim for emotional distress are barred.

[16]The PCCF Defendants are Lowe, PMC, Cronin, and Williams.

1. *Claims against Defendant Farley*

All claims against Defendant Farley, Plaintiff's appointed Pike County Public Defender to represent him in his criminal case at issue herein, relate to alleged improper representation and malpractice committed by Defendant Farley.  However, it is well-settled that a public defender is immune from suit.  Plaintiff is construed as claiming that Attorney Farley was, at all relevant times, acting as a public defender appointed to represent Plaintiff in his criminal misdemeanor charge in Pike County, Pennsylvania.

It is well-settled that a public defender does not act under color of state law for purposes of § 1983 when performing traditional functions as counsel for a Defendant in a criminal proceeding. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Black v. Bayer*, 672 F. 2d 309, 311 (3d Cir. ), *cert denied*, 459 U.S. 916 (1982).  Here, the Plaintiff's claims against Attorney Farley, detailed above, are based on actions he took while serving as Plaintiff's defense counsel at during his Pike County criminal case and January 22, 2004 sentencing hearing.  As discussed, Plaintiff also alleges that after his sentencing, Defendant Farley failed and refused to file any appeals for Plaintiff.  Plaintiff claims, in part, that his attorney violated his rights by failing to file favorable appeals for him, by disclosing sealed information against Plaintiff at his pre-sentence conference with PO Davis, by not allowing him to review various documents in his case, by not ensuring that he was sentenced in accordance with Plaintiff's sentence understanding, by neglectfully not showing up for Plaintiff's first sentence date in December 2003, by misrepresenting to Plaintiff the amount of time he would have to serve in jail, by not allowing Plaintiff to complete his statements at his January 22, 2004 sentencing hearing, and by representing Plaintiff in a matter for which a public defender is not eligible.  Plaintiff

14

also claims that Attorney Farley was incompetent and committed malpractice, that he failed to conduct a factual investigation into Plaintiff's charge, that he breached the attorney/client privilege, that he gave Plaintiff a false conception as to the amount of jail time he would have to serve, and that he told Plaintiff he was guilty.  (Doc. 1, pp. 7-13).  Plaintiff essentially claims that this defense counsel was negligent, rendered unethical and improper representation, failed to give him adequate representation, and failed to ensure his sentence would be consistent with what was promised to him.[17]

Plaintiff claims a vague conspiracy between his lawyer and Judge Kameen and the other Defendants, by which they somehow "induced the Plaintiff ... into a wanton discriminatory restating of a misdemeanor charge by the introduction of an excessive and illegal court decision" entered against him to deprive him of his freedom.  (Doc. 1, pp. 4, 7).  As discussed below, we do not find a cognizable § 1985(3) claim.

The Plaintiff does not make any specific  allegations against Defendants as to any agreement entered in order to violate Plaintiff's Constitutional rights with respect to their involvement in the prosecution, conviction and sentencing of Plaintiff.  As stated, to the extent Plaintiff is asserting

---

[17]Plaintiff's claims of ineffective assistance of counsel should be pursued in a collateral appeal of his conviction *via* a Pennsylvania Post Conviction Relief Act ("PCRA") petition. Despite the fact that a PCRA petition by Plaintiff may be now be untimely, under the law this was Plaintiff's remedy with respect to most of his claims against his defense counsel.  In fact, Plaintiff admits that he filed two PCRA petitions with the sentencing court on February 3, 2004 and June 14, 2004, but claims that Judge Kameen either denied them or failed to address them. (Doc. 1, p. 8).

Further, negligence is not a basis for a § 1983 action.  It is well-settled that mere negligence is not an actionable §1983 claim.  *See Davidsen v. O'Lone,* 752 F.2d 817 (3d Cir. 1984); *Daniels v. Williams*, 474 U.S. 327 (1986).

ineffective assistance of trial counsel claims, he should raise them in a PCRA petition with the state court.

Defendant Farley, acting as Plaintiff's public defender with respect to his representation of Plaintiff regarding the criminal charge in Pike County, is not a state actor, and as such, is not a proper Defendant in this §1983 action. *See Polk, supra*. We also find that the Plaintiff's allegations against this Defendant and how he represented Plaintiff do not amount to any violation of his constitutional rights, but rather state claims of ineffective assistance of counsel and malpractice. Moreover, as mentioned, the Plaintiff fails to state a cognizable conspiracy claim against any of the stated Defendants.

Plaintiff, while deemed as raising a conspiracy claim against the stated Defendants, alleges a vague conspiracy claim which took place due to an unspecified agreement between his public defender, Judge Kameen, the ADA, and the probation officer. We find that Plaintiff's bare conclusory allegations of conspiracy against the stated Defendants are inadequate to allege a conspiracy claim. The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim. (Citation omitted). *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from

16

which such an agreement can be inferred." *Id*. at 928.  The Plaintiff does not specify any role or

agreement of the stated  Defendants in the alleged plan to induce Plaintiff into a wanton restraint

of a misdemeanor charge by induction of an excessive and illegal court decision which resulted in

a deprivation of his liberty.

As the *Garrett* Court stated,

> Although § 1985(3) reaches "purely private" conspiracies, no cause
> of action exists when the private conspiracy interferes
> with rights that may only be abridged by state action.
> *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268,
> 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (citing *Carpenters*,
> 463 U.S. at 833 (1983)).  In addition, in order to prove a
> private conspiracy under § 1985(3), the plaintiff must show that
> "some racial, or perhaps otherwise class-based, invidiously
> discriminatory animus [lay] behind the conspirators' action."
> *Id*. (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102,
> 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

> There is no presumption of discriminatory purpose,
> and a plaintiff must clearly show intentional discrimination.
> *See DeBotton v. Marple Township*, 689 F.Supp. 477, 482
> (E.D. Pa. 1988).

The Plaintiff has not alleged any discriminatory purpose with respect to his claim against the

private individual, Defendant Farley.  There is no claim by Plaintiff of a discriminatory purpose.  The

private individual Defendant cannot himself violate the Plaintiff's constitutional rights, and the

Plaintiff has failed to state a § 1985(3) claim against this Defendant, as discussed.[18]

---

[18]As stated, Plaintiff is claiming that Attorney Farley was at all times acting as his public
defender.  Here, the Plaintiff's claims against the Defendant Farley   are based on actions (or
inactions)  he   took while serving as Plaintiff's defense counsel during his criminal case.
However, if a public defender conspires with state officials to deprive Plaintiff of his rights, then
the public defender is constructively deemed to be a state actor under §1983.  *Dennis v. Sparks*,
449 U.S. 24, 27-28 (1980).

We construe Plaintiff's allegations against Defendant Farley as raising claims under § 1983 and § 1985(3).  The *Garrett* Court considered claims made against the Bucks County Probation Office in which the Plaintiff alleged that there was no evidence to support his probation violation and the Probation Office Defendants conspired to use the court hearing for an unlawful purpose, *i.e.*, to cover-up Plaintiff's inadvertent release from prison.  The *Garrett* Court found that the Plaintiff failed to state a § 1983 claim against the Probation Office Defendants since he did not allege that they violated any of his constitutional or federal rights.  *Garrett, supra.* at * 5.

Similarly to *Garrett*, in the present case, the Plaintiff has failed to allege that his defense counsel (Defendant Farley), by not ensuring that Plaintiff received a sentence that did not exceed 90 days as he was promised with respect to his criminal charge (a charge of which Plaintiff was convicted and does not claim actual innocence of), violated his rights.  We find that Defendant Farley violated no Constitutional rights of Plaintiff by failing to guarantee a sentence of no more than 90 days.  (Doc. 1, p. 11).

In summary, to the extent that the Plaintiff claims that Attorney Farley, along with the ADA, the Judge, and the PO, were part of a conspiracy to allow the judge to impose an illegal and excessive sentence upon him, he has failed to specify any of their involvement as required.  *See*

---

As discussed above, Plaintiff has failed to allege sufficient facts showing that his named Public Defender conspired with any state officials to deprive him of his rights.  The Plaintiff claims that his Public Defender Farley  conspired with the Defendants to allow the court to render an excessive and illegal decision in his criminal case. (Doc. 1, p. 4).  The Plaintiff does not aver any specific facts  to show how his Public Defender was involved in such a stated conspiracy with the other  Defendants to deprive him of his freedom.  Nor does Plaintiff allege that this Defendant and the co-conspirators were motivated by a racial or otherwise class-based invidiously discriminatory animus.

*Flanagan, supra.* The Plaintiff has also failed to allege facts sufficient to state a § 1985(3) claim against his defense counsel, since he has not identified any specific conduct (other than the failure to ensure a sentence of no more than 90 days) by these Defendants which was taken in furtherance of the alleged conspiracy. *See Garrett, supra.* at § 4. Nor has Plaintiff sufficiently alleged any discriminatory purpose regarding his § 1985 (3) claim against his defense counsel.

Therefore, it will be recommended that the matter be dismissed as to the Plaintiff's defense counsel, Defendant Farley, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*2. ADA Tonkin*

Plaintiff claims that the prosecutor in his criminal case, Assistant District Attorney ("ADA") Tonkin, conspired with the other Defendants by denying him access and review of pertinent documents that were vital to his defense, and that the agreed plea agreement was not honored, not stated in open court and not submitted to Plaintiff or his counsel. (Doc. 1, p. 14).

As discussed above, we find no conspiracy claim against any of the Defendants. Further, Plaintiff has admitted that his plea agreement was incorporated into his court proceeding despite his claim that it was not stated in open court. (*Id.*, p. 10). Plaintiff also claims that Defendant Tonkin was part of the side bar conference between the judge and his defense counsel at his sentencing hearing on January 22, 2004, and that his attorney then told him that the judge would give him a 90-day sentence with 13 days credit for time served. (*Id.*). Plaintiff seemingly claims that ADA Tonkin was part of the claimed conspiracy with his defense counsel and the judge to impose an excessive and illegal sentence on him which was more than the promised 90 day minus 13 days time served. Plaintiff now attempts to hold ADA Tonkin liable for the sentence imposed

19

by Judge Kameen.  Plaintiff also claims that ADA Tonkin denied him access to unspecified documents vital to his defense notwithstanding the fact that Plaintiff plead guilty to the charge. Plaintiff does not state what documents were denied him by ADA Tonkin or how they would have benefitted his defense, especially since Plaintiff plead guilty to the charge.  Further, Plaintiff draws no connection between the documents he claims were denied him and the Judge's sentence which he claims was illegal and excessive, *i.e.* his main claim in the case.

Plaintiff's claims against ADA Tonkin all are directly related to Plaintiff's prosecution and sentencing.  There is not any claim that this Defendant misrepresented the sentence and penalty for Plaintiff's offense or withheld the pre-sentence report from the Plaintiff.  (Doc. 1, p. 10). Further, Plaintiff does not claim that Defendant Tonkin recommended a sentence for the Plaintiff to the Court which was in excess of any agreed sentence recommendation, *i.e.* 90 days maximum with 13 days time served credit.[19]

We find that ADA Tonkin is entitled to absolute immunity from Plaintiff's claims because his alleged conduct in entering into a plea agreement with the Plaintiff was "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).[20]

There is also no allegation that Defendant Tonkin took any specific act in furtherance of the alleged conspiracy to allow the court to render an excessive and illegal decision, or that he was

---

[19]While the prosecution and defense counsel can recommend a sentence for a Defendant, the Court is well aware that the Court is not bound by any recommendation.

[20]Plaintiff only requests monetary damages as against the Defendants.

motivated by racial or class-based invidiously discriminatory animus.   Therefore, as discussed, the Plaintiff has not stated a § 1985(3) claim against Defendant Farley and Defendant Tonkin.  *See Garrett, supra*.

The Plaintiff does not allege that ADA Tonkin misused his  authority by seeking an excessive sentence from the judge, but rather, that the plea agreement was not honored and was not stated in open court.   Again, the fact that the sentencing judge imposed a sentence in excess of what Plaintiff thought he was going to receive, 90 days plus 13 days time served, is in no way attributable to any unconstitutional conduct by Defendant Tonkin.   Further, as stated, Plaintiff admits that his plea agreement was made part of the record and incorporated into it.

The Plaintiff also states that Defendant Tonkin conspired with the other Defendants by denying him unspecified documents.  As stated, the alleged purpose of the conspiracy was to  allow the Judge to impose an excessive and illegal sentence on him that was contrary to his guilty plea agreement.  As stated, we find that ADA Defendant Tonkin is entitled to absolute immunity from the Plaintiff's § 1983 claim because all of his  alleged actions "were intimately associated with the judicial phase of the criminal process."  *Imbler,* 424 U.S. at 430.   Further, the Plaintiff has not alleged any class-based animus by Defendant Farley, Defendant Tonkin, Judge Kameen and PO Davis, and thus he fails to state a § 1985(3) claim.

The Plaintiff sues Defendant ADA Tonkin in his capacity as a prosecutor.   However, prosecutors are absolutely immune from a civil suit for damages under Section 1983 for the alleged deprivation of the accused's constitutional rights.  *Imbler, supra*; *Urrutia v. Harrisburg County Police Department*, 91 F. 3d 451, 462 ( 3d Cir. 1996).  Such immunity applies when the district attorney

is acting within the scope of his/her duties in initiating and pursuing criminal prosecution and in presenting the state's case. *Imbler*, 424 U.S. at 431. In other words, a district attorney enjoys absolute immunity for activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. It is clear that activities for which prosecutors have immunity includes those actions which lead to the "judicial phase of the criminal process" and those during the actual judicial proceedings (as in this case regarding the Plaintiff's sentencing). *Id*. The decision as to what plea agreement to enter with Plaintiff and as to what sentence to recommend that the court impose upon the Plaintiff falls squarely within Defendant Tonkin's official duties during the judicial phase of the criminal process.

The Plaintiff alleges that Defendant Tonkin violated his rights by conspiring to seek an excessive sentence against him, including depriving him of pertinent documents and not honoring the plea agreement.[21] Such allegations involve actions taken by Defendant Tonkin in his prosecutorial role and in his participation in a court proceeding. Insofar as Plaintiff is challenging the decision of Tonkin as whether to recommend a specific sentence against him, a criminal Defendant, this is within the ADA Defendant's official prosecutorial duties. Plaintiff's claims relate to the decision of this Defendant in entering into a peal agreement with him and to the decision of the court to impose a sentence which Plaintiff claims is excessive and beyond the agreed to sentence. Notwithstanding the Plaintiff's claim that Defendant Tonkin was part of a conspiracy to allow the court to impose an excessive sentence on him, this Defendant was still acting during the

---

[21]Plaintiff clearly could have filed discovery motions with the court requesting any exculpatory material the prosecution had, and if any documents were withheld, Plaintiff could have presented this issue in direct as well as collateral appeals with the state court.

judicial phase of the criminal process encompassed by prosecutorial immunity.

We find that all of Plaintiff's claims in this case related to the prosecutorial functions of Defendant Tonkin and  were an integral part of the judicial phase of Plaintiff's criminal case.  A prosecutor's role with respect to plea agreements and sentencing recommendations to the court are closely associated with the judicial process and part of his/her duties in acting as an advocate on behalf of the state.  A prosecutor is "duty bound" to "exercise his best judgment both in deciding which suits to bring and in conducting them in court."  *Imbler*, 424 U.S. at 424.

Defendant Tonkin  is entitled to immunity for any alleged actions which he took during the prosecution of Plaintiff's case and the sentencing hearing, as they were intimately associated with the judicial phase of litigation.   As such, the Plaintiff seeks monetary relief from an individual who is immune,[22] and the matter is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

The Plaintiff has also failed to allege facts sufficient to state a § 1985(3) claim against the Defendants.   The Plaintiff has not stated any specific conduct taken by any Defendant in furtherance of the alleged conspiracy.  Plaintiff only states that he was induced to enter the plea agreement, that his plea agreement was not honored and that the Defendants conspired to allow the court to render an excessive and illegal decision. (Doc. 1, p. 4).   However, the Plaintiff has not alleged any discriminatory purpose on the part of any Defendant.  In order to state a claim under §1985(3), as stated, it must be alleged that the Defendant's actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  *See Bieros v. Nicola*, 851 F. Supp. 683,

---

[22]As noted, the Plaintiff only seeks monetary damages from the Defendants in this case. (Doc. 1, p. 4).

686 (E.D. Pa. 1994) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).  Plaintiff does not

allege any class-based animus by the Defendants as required by §1985(3).

Therefore, it will be recommended that the matter be dismissed as to Defendant Tonkin

based on his immunity and the failure of Plaintiff to state a claim against him.

*3. Judge Kameen*

The Plaintiff alleges that Judge Kameen, who apparently accepted Plaintiff's guilty plea and

presided over Plaintiff's sentencing hearing, conspired with the Defendants to impose an excessive

and illegal sentence upon him and did not honor the plea agreement.   Plaintiff claims that the

judge did not state his sentence or sanctions in open court at his sentencing hearing, and that his

fine and required parole program attendance were not addressed at his sentencing.  Plaintiff also

states that the judge failed to give his reasons for deviating from the guidelines in Plaintiff's case.

Further, Plaintiff claims that Judge Kameen failed to address his *pro se* motions that he filed.[23]

There are no further allegations against this judicial officer.  (Doc. 1, pp. 15-16).  We find that

Plaintiff is asserting claims under § 1983 and § 1985(3) against Judge Kameen.

It is a well-established principle of law that judges are absolutely immune from suit for

damages for conduct performed in the course of their official duties. *Stump v. Sparkman*, 435 U.S.

349, 359 (1978); *Oatess v. Sobolevitch*, 914 F.2d 428, 431 (3d Cir. 1990) (recognizing that a court

may dismiss an allegation against a judge based on an exercise of judicial power).  Consequently,

---

[23]Plaintiff certainly had state court remedies available to pursue his claim that the court refused to rule on his motions, such as a petition for writ of mandamus. Plaintiff does not indicate if he pursued any of his state court remedies, either with respect to his claims against the sentencing judge or with respect to his ineffective assistance of counsel claims against his defense counsel.

since all of the claims against Judge Kameen are based on actions taken by him in the exercise of his official duties, *i.e.* accepting Plaintiff's guilty plea, sentencing the Plaintiff and considering Plaintiff's motions, or failure to do so, he is entitled to absolute immunity from monetary damages.[24]

We read Plaintiff's allegations against the Judge as all related to his official duties in presiding over the Plaintiff's guilty plea and subsequent January 22, 2004, sentencing hearing. As the *Garrett* Court stated, "[i]f the acts complained of are of the kind normally performed by a judge, and if the Plaintiff was dealing with the judge in his judicial capacity, then suit cannot be entertained." (citation omitted). *Garrett, supra.* at * 6. In our case, the Plaintiff's allegations against Judge Kameen relate to actions taken in his judicial capacity. Judge Kameen is clearly absolutely immune from Plaintiff's § 1983 claim, and he should be dismissed with respect to Plaintiff's § 1985(3) claim, as there is no proper conspiracy alleged.

We recognize that a *pro se* litigant should be freely granted leave to amend a pleading. However, since the Plaintiff fails to state any cognizable claim against the stated three Defendants Farley, Tonkin, and Judge Kameen, and the Defendants are entitled to absolute immunity for the monetary relief sought, we find that any further amendment would be futile in this case. *See Fauver v. Shane*, 213 F. 3d 113, 116-17 (3d Cir. 2000).[25]

---

[24]The Plaintiff does not seek injunctive relief as against the Defendants. (Doc. 1, p. 4). Rather, he seeks only monetary damages. (*Id.* at p. 4).

[25] We also find futility based on the following factors. The Plaintiff states that he was found guilty as a result of his guilty plea. Plaintiff does not state if he was successful in attacking his conviction and sentence either in a direct or collateral appeal with the state courts. However, since he was convicted, we note that any claim of malicious prosecution may fail. *See Deary v. Three Un-named Police Officers*, 746 F.2d 185 (3d Cir. 1984) (a required element for an actionable malicious prosecution claim under § 1983 is that the plaintiff's prosecution

Therefore, we shall recommend that this case be dismissed as against the stated three Defendants, Farley, Tonkin and Judge Kameen.

### 4. *Probation Officer Davis and Parole Officer Thiel*

The Plaintiff alleges that Probation Officer Davis, at his pre-sentencing meeting, tried to instill him into admitting to have committed other crimes not relevant to Plaintiff's charge at issue and which were committed by another person. (Doc. 1, p. 14). Plaintiff claims that Defendant Davis used his previous bad acts in his pre-sentence report and that he denied Plaintiff access to review the pre-sentence report. (*Id.*). Further, Plaintiff claims that Defendant Davis used biased, prejudicial and malicious judgments of Plaintiff's character in the pre-sentence report, in willful and wanton neglect as to their veracity. (*Id.*, p. 15). Plaintiff claims that State Parole Officer Thiel knowingly denied him access to a rehabilitation facility which he was granted by the State Parole Board, and that Plaintiff was not advised of the reason as to why he was denied acceptance into

---

terminates in his favor); *Felker v. Angradi*, 1992 WL 170586 at *3 (M.D. Pa.). The Plaintiff may also be alleging that he was falsely arrested. An arrest violates the Fourth Amendment where it is not supported by probable cause. *Orsatti v. N.J. State Police*, 71 F. 3d 781, 790 (3d Cir. 2000). The Plaintiff does not state that his arrest was lacking in probable cause or that any of the Defendants were involved with his arrest. Further, since Plaintiff was convicted of a crime, his claims against the Defendants may be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which precludes a §1983 claim challenging a Plaintiff's conviction. Again, Plaintiff does not indicate the outcome of his charge insofar as if he filed a successful appeal.

Plaintiff's claims may also be time barred by the two-year statute of limitation, which is an affirmative defense that Defendants would have to assert. Plaintiff indicates that many of his claims arose in 2004, which may be more than two years before this case was field , *i.e.* August 15, 2006. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 78-79 (3d Cir. 1989) (§1983 claims are subject to two-year statute of limitations).

Finally, to the extent Plaintiff is claiming that his Pike County sentence was excessive based on Pennsylvania law, it is well-settled that federal courts cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

the program.  Plaintiff states that "this action was conspired by Mr. Thiel and Lt. Williams, no facilities for disabled at program." (*Id.*, p. 19).

The decision to rely, at time of sentencing, upon any prior bad acts Plaintiff may have committed, despite being in his pre-sentence report, was one for the sentencing judge to make. Thus, Plaintiff cannot claim that his sentence was increased by Defendant Davis due to improper incorporation of his prior bad acts into his pre- sentencing report.  Further, Plaintiff should have raised an objection at sentencing as to any matters he felt were not relevant or inadmissible with respect to his sentencing.  Any claim by Plaintiff with respect to the statements made in the pre-sentence report by Defendant Davis, whether willfully or negligently made, are barred by judicial immunity.

As to Plaintiff's claim against Defendant Thiel, there is no Constitutional right of a prisoner to any rehabilitation program or treatment facility.[26]  In *McFadden v. Lehman*, 968 F. Supp. 1001, 1003 (M.D. Pa. 1997), this Court held stated that "[m]any courts have held that prisoners have no constitutional right to various rehabilitative programs including drug treatment, employment, or other rehabilitation, education or training programs while in prison." (Citations omitted).  This court further stated that "[i]t is well-recognized that a prisoner has no right to participate in any rehabilitative pre-release program." *Id.*

---

[26] We note that as in *McFadden*, to the extent that our Plaintiff seems to claim a liberty interest in participating in a pre-release program prior to being released on parole, the law is clear that "the Constitution creates no liberty interest in parole ... and Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs." (Citations omitted).   968 F. Supp. at 1004.

We construe Plaintiff's allegations against the probation/parole officer Defendants as raising claims under § 1983 and § 1985(3).  The *Garrett* Court considered similar claims made against the Bucks County Probation Office in which the Plaintiff alleged that there was no evidence to support his probation violation and the Probation Office Defendants conspired to use the court hearing for an unlawful purpose, *i.e.*, to cover-up Plaintiff's inadvertent release from prison.  The *Garrett* Court found that the Plaintiff failed to state a § 1983 claim against the Probation Office Defendants since he did not allege that they violated any of his constitutional or federal rights.  *Garrett, supra.* at * 5.

Similarly to *Garrett*, in the present case, the Plaintiff has failed to allege that the probation/parole  agent Defendants, by including irrelevant conduct in the Plaintiff's presentence report and by denying Plaintiff access to a rehabilitation program, violated any of his rights.  We also find that the probation/parole agent Defendants are entitled to absolute immunity in this case.

The probation/parole agent Defendants' alleged actions alleged with respect to including irrelevant prior bad acts in the pre-sentence report and denying of access to a rehabilitation  facility, were clearly integrally related to the judicial process and were judicial functions.      The probation/parole  agents' alleged acts are, in our view,  adjudicative acts that entitle the officers to absolute immunity.  *See e.g. Dorman v. Higgins*, 821 F.2d 133, 136-137 (2d Cir. 1987) (Court granted absolute immunity from damages suit to probation officer for his preparation of presentence report because in preparing presentence reports, probation officer acts as an arm of the court.).  *See also Hili v. Sciarrotta*, 140 F.3d 210, 213 (2d Cir. 1998) (New York State probation officer absolutely immune from suit for preparing and furnishing presentence report.).  In this case,

28

the Plaintiff's stated allegations against the probation/parole agent Defendants are all based on actions they took with respect to Plaintiff's sentence and later parole consideration.  The probation/parole agent Defendants should be afforded absolute immunity, since their alleged conduct relates to Plaintiff's sentence and parole eligibility, which is intimately associated with the judicial process.[27]

As the Plaintiff is suing the probation/parole agent Defendants for their function as an arm of the court, the Plaintiff's Complaint is subject to dismissal, since the Defendants are absolutely immune.   Therefore, it will be recommended that the matter be dismissed as to the probation/parole agent Defendants, Davis and Thiel, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

To the extent that the Plaintiff claims that the parole agent Defendants were part of the conspiracy to allow the court to render an excessive sentence and to deny him parole, he has failed to specify any of their involvement in an agreement to violate his rights as required.  Further, the decision as to the ultimate sentence Plaintiff received was solely up to the sentencing judge, and decision as to whether Plaintiff was eligible for parole was up to the Pennsylvania Parole Board, and not the individual officers of either the probation department or the parole office.  *See Flanagan, supra.* The Plaintiff has also failed to allege facts sufficient to state a § 1985(3) claim against the parole agents, since he has not identified any specific conduct by any Defendants which was taken

---

[27]In *Sykes v. James*, 13 F.3d 515 (2d Cir. 1993), the Court held that a parole officer was entitled to absolute immunity as a witness in a state habeas proceeding in a § 1983 case in which the Plaintiff alleged the officer provided a perjurious affidavit and conspired to give false testimony at the parole revocation hearing.

in furtherance of the alleged conspiracy. *See Garrett, supra.* at § 4. Nor has Plaintiff alleged any discriminatory purpose regarding his claim against the parole agents.

We recognize that a *pro se* prisoner should be freely granted leave to amend a pleading. However, since the Plaintiff fails to state any cognizable claim against the probation/parole Defendants, and these parole agent Defendants are entitled to absolute immunity, we find that any amendment would be futile in this case. *See Fauver v. Shane*, 213 F. 3d 113, 116-17 (3d Cir. 2000). (Doc. 1, p. 3).

Therefore, we shall recommend that this case be dismissed as against the stated Defendants, Davis and Thiel.

Next we consider Plaintiff's claim against the PCCF Defendants.

5. *Defendant Prime Care Medical, Inc.*

Plaintiff also names Prime Care Medical as a Defendant. PCM is not a person for purposes of § 1983. It is well-settled that neither a state or its agencies is a "person" subject to suit under section 1983. *Hafer v. Melo,* 502 U.S. 21, 25-27 (1991); *Will,* 491 U.S. at 71; *Curtis v. Everette,* 489 F.2d 516, 521 (3d Cir.1973), *cert. denied,* 416 U.S. 995 (1974). Defendant PCM, if it is an agency of the Commonwealth of Pennsylvania, is not a "person" subject to suit under section 1983.

Further, the actions of PCM employees, such as the nursing staff at PCCF and the attending doctor (Doc. 1, p. 17), cannot be attributed to PCM itself for purposes of § 1983 unless it is alleged and later proved that there was a relevant PCM policy or custom, and that the policy caused the constitutional violation alleged. *See Natale v. Camden Co. Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). PCM cannot be held responsible for the acts of its employees under a theory

of *respondeat superior* or vicarious liability. *Id.* at 583. In this case, there is no claim by the Plaintiff that PCM had an affirmative policy or custom that prevented its employees from providing Plaintiff with adequate medical care, from referring Plaintiff for any required treatment, or determining the treatment for sciatic spasms did not require a hospital visit by Plaintiff. Nor is there any claim that PCM ignored an obvious inadequate practice by the Defendants that was likely to result in a violation of Plaintiff's Eight Amendment rights. Therefore, Defendant PCM should be dismissed.

Moreover, Plaintiff's claims against Defendant PCM are that it allowed unprofessional and inadequate treatment to Plaintiff and that it charged him a fee for a nurse referral to see a doctor. (Doc. 1, p. 17). Plaintiff then claims that the attending doctor refused to let him go to the hospital due to "sciatic spasms." Plaintiff's claim against the unnamed doctor may amount to negligence of malpractice, but since they involve a dispute with the doctor as to required medical care, they are not actionable under § 1983. Further, Plaintiff does not claim that he was denied medical care for his sciatic spasms. Rather, he only claims that he disagreed with the attending doctor's treatment and decision that Plaintiff did not require hospital care.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to

31

inmate health or safety.  *Farmer,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*.  "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'"  *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious.  *Estelle*, 429 U.S. at 106.

Moreover, a differing opinion as to the appropriate medical care does not amount to an Eighth Amendment violation.  *Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied,* 486 U.S. 1006 (1998).  Also, the doctrine of *respondeat superior* is not an acceptable basis for liability under Section 1983.  *See Drummer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Rizzo v. Goode*, 423 U.S. 367 (1976).  Liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation.  *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).

The Plaintiff does not allege that any named Defendant violated the Eighth Amendment by failing to provide adequate medical care, rather, he claims that the attending doctor would not let him go to the hospital to treat his sciatic spasms.   This claim does not amount to an Eighth Amendment violation.

Further, since Plaintiff was being treated by the prison doctor, any claims of inadequate medical care and improper treatment as to any other non-medical Defendants, are subject to dismissal. *See Durmer v. O'Carroll*, 991 F2d. 64, 69 (3d Cir. 1993).

Any claim that Defendants were deliberately indifferent to the Plaintiff's serious medical needs must fail. The Defendants, non-physicians, cannot be found deliberately indifferent to the Plaintiff's serious medical needs, as the Plaintiff acknowledges that he was under the care of the prison attending doctor. *Durmer*, 991 F.2d. at 69 (3d. Cir. 1993). The decisions how to treat Plaintiff for his sciatic and with what medication were made by the treating doctor. We recognize that in the case of *Devern v. SCI-Graterford*, 2004 WL 1552000 * 1 (E.D. Pa.), the Court limited *Durmer* and held that a "non-physician supervisor may be liable under § 1983 if he had knowledge or reason to know of medical mistreatment." In our case, the Plaintiff does not assert that Defendants were involved with the decisions as to how to treat Plaintiff and with what medication. Nor is it alleged that Defendants knew that Plaintiff's treatment by the medical staff was improper or inadequate. Further, it is not alleged that Defendants knew that the finding of the medical staff that Plaintiff did not have to go to the hospital for his sciatic spasms was improper or rendered to cause him pain.

Plaintiff attempts to make the Defendants responsible for the conduct of the treating doctor whom he admits was providing him with care. Liability in a § 1983 case may only be based on the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials,* 546 F. 2d 1077 (3d Cir. 1976); *Rizzo v. Goode*, 423 U.S. 362 (1976). There is no claim that Defendants had any direct involvement in Plaintiff's denial of medical

treatment claim or that they had knowledge of any medical mistreatment.  As stated, all of the actions taken with respect to Plaintiff's health care were performed by the prison attending  doctor.

Additionally, Plaintiff does not allege any of the Defendants were deliberately indifferent to his serious medical condition and needs.  Clearly, Plaintiff was allowed to see a doctor, albeit he was charged a fee for the referral.  Plaintiff's claim that the doctor should have allowed him to go to the hospital for his sciatic spasms is not an Eighth Amendment claim.  Rather, it is merely a disagreement with the doctor as to the required treatment for his condition.[28]

---

[28]Plaintiff's claim that two prison staff committed him to the segregation unit due  to his complaints of pain, are not made against any named Defendant in this action.  (Doc. 1, p. 17).  Even if they were, Plaintiff had no liberty interest in remaining in the general population at the prison.  *See Sandin, supra.*

Further, Plaintiff's claim as to the conditions of the segregation unit do not relate to any of our Defendants herein, and even if they did, they do not rise to the level of an Eighth Amendment conditions of confinement claim, *i.e.* cold air ducts blowing constantly, and a leaking sink.  While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)).  "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)).  Under *Farmer*, conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the prison official Defendants.  *Id*. at 834.  Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness.  *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). In order to find an Eighth Amendment violation regarding conditions of confinement, the evidence must show that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.  Here, Plaintiff apparently contends that the Eighth Amendment was violated because the segregation unit had cold air ducts constantly blowing and had a leaking  sink.  These allegations do not state an Eighth Amendment claim.

Plaintiff also claims that PCM nurses denied him a band-aid for cut fingers and told Plaintiff that he had to see a doctor.  (Doc. 1, p. 17).    Plaintiff does not claim denial of medical care, rather, he disputes the nurses' contention that he had to see a doctor.  Indeed, Plaintiff does not claim that the nurses then denied his request to see a doctor or that the doctor refused to treat him. In any event, cut fingers requiring a band-aid can hardly be said to amount to a serious medical condition rising to the level of an Eighth Amendment claim.  *See Monmouth, supra.*

### 6.  *Defendant Warden Lowe*

Plaintiff alleges that Warden Lowe of PCCF allowed his subordinates to deny him proper medical care and allowed them to charge gouging exorbitant fees for the mailings of his legal correspondence.  Plaintiff also alleges that the warden denied him release to a drug/alcohol program because the prison medical department allowed Plaintiff to be given a narcotic.  Plaintiff claims that since he was given a narcotic by the medical staff (presumably to relieve the severe pain Plaintiff alleges he was in due to his sciatic spasm), he was not accepted into the drug/alcohol program which in turn caused him to serve an additional 9 months in prison.  (Doc. 1, p. 16). Plaintiff concludes by stating that the Warden does not honor indigent status.  (*Id.*, p. 17).

We find that Plaintiff's claims against Warden Lowe are all based on *respondeat superior*. *See Rode, supra.*  Also, since Plaintiff was admittedly being treated by the attending prison doctor for his condition, the Warden cannot be held liable for this treatment. *See Durmer, supra.*

Plaintiff does not claim that the Warden was directly involved in any decision to deny him medical care.  Nor does Plaintiff claim that due to the excessive fees for his mailings he was denied

access to the courts or that any of his legal cases were negatively impacted.   Plaintiff does not state that the Warden was directly involved in the medical decision to give him a narcotic to treat his ailments and that he ordered it deliberately to prevent Plaintiff's acceptance into the drug/alcohol program.  In fact, Plaintiff seems to admit that the medical staff at the prison was treating him and that this staff gave him the narcotic.  Further, as stated, Plaintiff had no right to participate in any pre-release programs.  *See McFadden, supra*.  In short, Plaintiff does not allege the personal involvement of the Warden in any of the stated claims against him.  *See Sutton v. Rasheed*, 323 F. 3d 236, 249 (3d Cir. 2003).

Therefore, we shall recommend that Warden Lowe be dismissed.

*7.  Defendant Cronin, PCCF Administration Office*

Plaintiff avers that Defendant Cronin incorporated excessive and unreasonable fees with respect to the mailings of his appeal.  Plaintiff claims that the fees charged were beyond his ability to pay.  Plaintiff claims that the fee structure at the prison with respect to legal mail were designed to prevent him from filing his appeal by gouging and enhancing the actual cost of his legal mailings. Plaintiff claims that, based on the administrative officer's failure to charge actual fees for mailings, his brief was left stagnant regarding his February 2004 appeal of his sentence.  Plaintiff states that as of the date of his present Complaint, his appeal was still not addressed by the State Court. (Doc. 1, p. 18).

We find that Plaintiff is asserting a First Amendment denial of access to the courts claim against Defendant Cronin.  However, we find that Plaintiff fails to state such a claim against this

Defendant.  Plaintiff does not claim any actual injury as required for such a claim.  *See Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997); *Adegbuji v. Middlesex County*, 169 Fed.Appx. 677 (3d Cir. 2005) (Non-Precedential).   As stated above, Plaintiff claims that he filed appeals and motions with the sentencing court, but claims that Judge Kameen refused to rule on them.  Plaintiff does not once claim that Judge Kameen dismissed any of his appeals or motions due to the fact that Plaintiff failed to file his brief in support thereof.[29]   As discussed, Plaintiff has not alleged an injury regarding his denial of access to the courts claim.  As stated, Plaintiff only avers that his appeal brief was left stagnant and that his appeal of his sentence, filed February 2004, is still not addressed by the state sentencing court.  Plaintiff does not claim that his appeal of his sentence was dismissed for his failure to file a brief.  (Doc. 1, p. 18).  It is well established that prisoners have a constitutional due process right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817 (1977).  However, in order to prevail on such a claim, it is necessary to allege an actual injury -- an instance in which the Plaintiff was actually denied access to the courts.   *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2163 (1996); *Peterkin v. Jeffes*, 855 F.2d 1021, 1041 (3d Cir. 1988), *citing Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982); *Adegbuji, supra*.

Since the Plaintiff does not allege any actual injury with respect to any case he has filed in court, including his appeal of his January 2004 sentence which he has now fully served, he does

---

[29]We also fail to see how any actual injury can be claimed regarding an appeal of a sentence that Plaintiff has now fully served.

not state a denial of access to court claim against Defendant Cronin.   In fact, Plaintiff readily admits that he filed an appeal of his sentence on February 17, 2004 and that it was docketed on February 20, 2004.  Plaintiff admits that his appeal was still pending.  (*Id*., p. 12).  Plaintiff does not claim that his appeal was dismissed due to failure to file a support brief since he could not afford the postage fee charged by Defendant Cronin.  Plaintiff also indicates that Judge Kameen refused to address any of his motions and relief requests he filed *pro se*.  (*Id*., p. 16).  Plaintiff does not state that the judge dismissed any of his filings for failure to file any briefs.  Indeed, it is clear that Plaintiff was able to make several filings from prison, and that they were received and docketed by the court.

Thus, Defendant Cronin should be dismissed.

8.  *Lt. Williams of PCCF*

Plaintiff claims that Defendant Williams denied him  access to court documents relevant to his charges  and his case which he requested under FOIA, and which were supposed to have been sent from the court to the prison.  (Doc. 1, p. 18).  Plaintiff does not elaborate on what documents Lt. Williams withheld from  him or how  they impacted is criminal case.  In short, Plaintiff again fails to allege any actual  injury with respect to his denial of access  to the court  claim against Defendant Williams.  *See Lewis, supra*.  Also, as discussed above, Plaintiff admits that he was able to file various motions with the state court regarding his conviction and sentence, and he does not claim that any of his filings or motions were dismissed by the state court due to his failure to be given any court documents by Defendant Williams.

Plaintiff also claims that Defendant Williams denied him the knowledge as to the reason why he was not accepted into a pre-release drug/alcohol rehabilitation program, which he was eligible for when he was granted parole in June 2004.  Plaintiff states that the Defendant only told him that the program was not suitable for him.  Plaintiff claims that by being denied acceptance into the program he had to serve an extra 9 months in jail.  (*Id*.).[30]  Plaintiff does not allege the personal involvement of Defendant Williams with respect to denying him acceptance into the program; rather, he only claims that she failed to give him access to a valid reason for his denial into the program.  As discussed, Plaintiff had no right to participate in the pre-release program.  *See McFadden, supra.*

Plaintiff's claim against Defendant Williams is not that she was involved in the decision to give him a narcotic which precluded his participation in the drug/alcohol program, and thus delayed his parole for 9 months.  Rather, he claims that this Defendant did not disclose to him the real reason for the refusal of his entrance into the program.  The claim that Defendant Williams refused to reveal to Plaintiff the real reason for his failure to be accepted into the program does not arise to a Constitutional violation, since Plaintiff's incarceration was not alleged to be extended by Defendant Williams' conduct, and since Plaintiff had no right to participate in the program.  Plaintiff clearly states that he was not accepted into the program, thus delaying his parole because the

---

[30]As noted above, it would seem that Plaintiff's claim that Defendant's conduct somehow prevented him from being paroled regarding a June 4, 2004 grant of parole, may be time-barred.   Section 1983 claims are subject to a two-year statute of limitations.  See *Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6.

medical staff was administering him a known narcotic which precluded his acceptance into the program. (Doc. 1, p. 19). Thus, Defendant Williams' alleged conduct was not the cause of Plaintiff's rejection into the program, which rejection he claims extended his incarceration by 9 months.

Therefore, we shall recommend that Defendant Williams be dismissed since Plaintiff fails to state any claim based upon this Defendant's personal involvement in conduct amounting to a constitutional violation.

Accordingly, we shall recommend that this case be dismissed as to all Defendants.

## VI.  Recommendation.

We respectfully recommend that the First Amendment, Fifth Amendment, Eighth Amendment and Fourteenth Amendment claims against all Defendants be dismissed for failure to state any violation of Plaintiff's constitutional rights. We also recommend that Plaintiff's Motion for Leave to Proceed *in forma pauperis* be denied as moot.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 13,  2006**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD STANKOWSKI,           :       CIVIL ACTION NO. **3:CV-06-1582**

                                   :

        Plaintiff          :       (Judge Munley)

                                   :

        v.            :       (Magistrate Judge Blewitt)

                                   :

THOMAS F. FARLEY, et al.,     :

                                   :

        Defendants      :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 13, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,

recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

disposition of a prisoner case or a habeas corpus petition within ten (10)

days after being served with a copy thereof.  Such party shall file

with the clerk of court, and serve on the magistrate judge and all

parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which

objection is made and the basis for such objections.  The briefing

requirements set forth in Local Rule 72.2 shall apply.  A judge shall

make a *Defendant novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed
before the magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


_____ s/ **Thomas M. Blewitt**
                                 **THOMAS M. BLEWITT**
                                 **United States Magistrate Judge**


**Dated: September 13, 2006**