## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD STANKOWSKI,** | : | **No. 3:06cv1582** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS E. FARLEY,** | : | |
| **RAYMOND J. TONKIN,** | : | |
| **BRIAN DAVIS,** | : | |
| **CRAIG LOWE,** | : | |
| **PRIME CARE MEDICAL, INC.,** | : | |
| **KATHY CRONIN,** | : | |
| **HON. JOSEPH F. KAMEEN,** | : | |
| **PAUL THEIL, and** | : | |
| **LT. WILLIAMS,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## Memorandum

Before the court are plaintiff's objections (Doc. 8) to the report and recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 5) in this case. The matter has been briefed and is ripe for disposition.

**Background**

This case arises out of plaintiff's guilty plea and incarceration in Pike County, Pennsylvania.[1] On August 15, 2006, plaintiff filed a *pro se* suit in this court pursuant to 42 U.S.C. § 1983 against the attorney who represented him in that case (Defendant Farley), the Assistant District Attorney who prosecuted him (Defendant

---

[1]Plaintiff's complaint does not specify the circumstances of his arrest or the crime to which he pled.

Tonkin), the judge who sentenced him (Defendant Kameen), the probation and parole officers assigned to him (Defendants Davis and Thiel), various county prison officials and employees who he claimed violated his constitutional rights during his incarceration (Defendants Lowe, Cronin and Williams) and the company hired to supervise medicine in the prison (Defendant Prime Care Medical).  (See Complaint (Doc. 1)).  Plaintiff had been paroled on July 24, 2005.  (Id. at 3-4).  Plaintiff sought a jury trial to address his claims of unwarranted seizure of personal property, "pain and suffering, mental anguish and depression, extended incarceration and sanctions exemplified by the defendant's [sic]."  (Id. at 4).  He asked for monetary damages of $73,000 ($100 a day for two years of incarceration), punitive damages, "and related sanctions."  (Id.).

In his complaint, plaintiff alleged that Defendant Farley, his public defender, engaged in a conspiracy with other defendants to deny plaintiff his constitutional rights.  (Id. at ¶ 1B).[2]  Plaintiff also claimed that Farley refused to investigate the charges against the plaintiff, but instead insisted on plaintiff's guilt.  (Id. at ¶ 1C). Plaintiff alleged malpractice by Farley in explaining the consequences of pleading guilty in the case.  (Id. at ¶ 1D).  He also claimed that Farley refused to file any appeals in the case, insisting that plaintiff lacked standing to do so.  (Id. at ¶ 1E).  At

---

[2]Defendant filed his complaint using a *pro se* form probably obtained from the Pike County prison.  The document was not paginated.  We have to this point referred to the page numbers supplied by the clerk of court in the filing.  As the plaintiff's factual allegations are supplied in numbered and alphabetic paragraphs, we will use that designation where appropriate.

2

the plaintiff's sentencing, Defendant Farley attempted to prevent plaintiff from addressing the court in the manner that he wished to and instead insisted that plaintiff simply ask for a fair sentence.  (Id. at ¶ 1F).  Defendant Farley also failed to appear at the court's first attempt to sentence plaintiff, adding increased time and expense to both the plaintiff and the court.  (Id. at ¶ 1F).[3]  Plaintiff also alleges that Farley misled him about the length of his sentence; Farley told him that his sentence would not be more than ninety days, but plaintiff served thirteen and one-half months in prison, as well as additional sanctions.  (Id. at ¶ 1G).  Plaintiff had agreed to a guilty plea, believing he would be sentenced to only ninety days.  (Id. at ¶ 1H).  He alleges that he signed this plea due to the "lies, manipulation and trickery" of Defendant Farley.  (Id. at ¶ 1I).  After this plea, Defendant Farley refused to represent defendant in any appeals, and he was forced to proceed *pro se*.  (Id. at ¶ 1K).  Plaintiff alleged as well that Defendant Farley violated lawyer-client confidentiality by revealing information to a probation officer in preparation for sentencing.  (Id. at ¶ 1M).

Plaintiff also alleges that he was denied access to and review of court documents vital to his case, such as reports of discovery, his criminal history report, the probation office's pre-sentence report, certain (unnamed) documents forwarded to the jail from the sentencing court and a transcript of a court hearing.  (Id. at ¶ 1N).

---

[3]Plaintiff's Complaint uses "F" twice consecutively.  This citation refers to the second of those paragraphs.

Plaintiff blames defendant Judge Kameen for his lack of access to the transcript. (Id.). He contends that Defendants Farley, Tonkin and Davis also prevented his access to these documents, and that Lt. Williams did not allow him to review the documents sent to the Pike County Jail. (Id.).

Other defendants besides Attorney Farley, plaintiff claims, participated in a conspiracy to convince him to accept an unjust sentence in violation of his rights. Assistant District Attorney Tonkin, for instance, allegedly conspired with his co-defendants and "incorporated malfeasance against the plaintiff by denying him access and review of pertinent documents" essential to plaintiff's defense. (Id. at ¶ 2A). Tonkin also assured that the plea agreement to which plaintiff agreed "was not honored, not stated in open court, nor submitted to plaintiff's counsel" or plaintiff himself. (Id. at ¶ 2B). Defendant Brian Davis, a Pike County probation officer, attempted to convince plaintiff to admit to a crime he had not committed and which was irrelevant to the charges plaintiff faced. (Id. at ¶ 3A). Davis also improperly used previous "bad acts" by the plaintiff in determining plaintiff's sentence. (Id. at ¶ 3B). He failed to provide plaintiff an opportunity to review the pre-sentence report. (Id. at ¶ 3C). Defendant Davis also allegedly "incorporated biased, prejudicial and malicious judgment of character of the plaintiff's demeanor" into his report, demonstrating a "vindictive" and "negligent" attitude toward plaintiff. (Id. at ¶ 3D).

According to the plaintiff, Judge Kameen, who sentenced him, did not announce this sentence in open court on January 22, 2004. (Id. at ¶ 4A). Judge

4

Kameen also allegedly failed to discuss with plaintiff or his counsel the proposed

sentence, and did not allow plaintiff to address the nature of the sentence in court.

(Id. at ¶ 4B).  The sentence Judge Kameen handed down, plaintiff asserts, was

"illegal and excessive," and the judge failed to issue a written memorandum

explaining his deviations from the sentencing guidelines.  (Id. at ¶¶ 4C-D).  Judge

Kameen also apparently failed to address any of the plaintiff's *pro-se* post-trial

motions.  (Id. at ¶ 4E).

Mistreatment of the plaintiff allegedly continued when he entered prison at the

Pike County Correctional Facility in Lords Valley, Pennsylvania.  Warden Craig

Lowe, plaintiff claims, permitted discrimination to occur at the facility by allowing his

subordinates "to deny plaintiff proper medical treatment," to charge "exhorbitant fee's

[sic] for the mailing" of legal materials, to prevent plaintiff from entering a drug and

alcohol treatment, and to give him a narcotic that prevented his entry into such a

program.  (Id. at ¶ 5A).[4]  Warden Lowe also failed to "honor indigent status."  (Id. at ¶

5B).  Defendant Thiel, in his role as parole officer, also allegedly participated in this

scheme to prevent plaintiff from gaining access to a substance abuse treatment

program.  (Id. at ¶ 8A).  Plaintiff claims that Defendant Thiel prevented him from

learning the real reason for this denial.  (Id.).  Thiel allegedly conspired with

---

[4]Plaintiff alleges that co-defendants Williams, Prime Care Medical and Cronin violated his constitutional rights by denying him due process of law.  (Complt. at p. 19).  He contends that "Warden Lowe, who is the guiding force of the action's [sic] imposed of [sic] the individual's [sic] so-named above and against the plaintiff, is accountable, for the conduct instituted by the staff of the Pike County Correctional Facility."  (Id.).

Defendant Williams to achieve this end.  (Id.).

Prime Care Medical was also involved in this alleged mistreatment.  The company, apparently charged with maintaining medical services in the Pike County Correctional Facility, allegedly "allowed unprofessional and inadequate treatment" to be provided the plaintiff.  (Id. at ¶ 6A).  The company also supposedly charged plaintiff fees for a nurse's referral to see a doctor.  (Id.).  The doctor who provided plaintiff with medical care, plaintiff claims, would not permit him to seek treatment at a hospital for back and leg pain due to sciatic spasms.  (Id. at ¶ 6B).  When plaintiff complained of pain, three officers or officials at the prison who are not named here as defendants had plaintiff confined to the segregation unit.  (Id. at ¶ 6C).  Two cold air ducts blew "constantly" in this segregation cell, and the sink "leaked water onto the sheets and blanket and a bed" that was on the floor.  (Id.).  Nurses who worked weekday shifts for Prime Care also refused plaintiff access to bandages[5] for cuts to his fingers, demanding that he see a doctor in order to obtain them.  (Id. ¶ 6D).

Plaintiff also alleges that Defendant Kathleen Cronin, an employee of the Pike County Correctional Facility Administration Office instituted "excessive and unreasonable fees" for mailing plaintiff's appeal of his sentence.  (Id. at ¶ 7A).  These fees, plaintiff claims, were designed to prevent him from appealing "by gouging and enhancing the actual cost of legal mailings for the plaintiff."  (Id.).  As a

---

[5]We will use the term "bandages" to refer to the adhesive strips commonly denoted by the trade name "BandAid."

result, "plaintiff's brief was left stagnant." (Id.).  Nevertheless, plaintiff filed an appeal

of his sentence in February 2004.  (Id.).  The court has not yet ruled on the matter

when plaintiff filed his claim.  (Id.).

Plaintiff also contends that his access to court documents was limited by

Defendant Williams, who denied him an opportunity to review documents he had

requested under the Freedom of Information Act.  (Id. at ¶ 8A).  Defendant Williams

also refused to explain why plaintiff did not gain access to a drug and alcohol

treatment program which would have limited the amount of time he had to remain in

prison.  (Id. at ¶ 8B).  As a result, plaintiff claims, he had to remain incarcerated for

nine months longer than he should have been.  (Id.).

Plaintiff gathered these charges together into a complaint (Doc. 1) which he

filed on August 15, 2006.  Plaintiff also filed a motion (Doc. 2) for leave to proceed *in

forma pauperis* in this court.  Magistrate Judge Thomas M. Blewitt then gave

plaintiff's complaint a preliminary screening to determine whether process should be

issued in the case.  In a report and recommendation (Doc. 5) issued on September

13, 2006, Magistrate Judge Blewitt concluded that plaintiff's complaint rested on a

baseless legal theory and recommended that we dismiss the action.  Plaintiff

objected to these findings (Doc. 8), bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 for constitutional

violations we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall

have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

When no objections are offered, in order to decide whether to adopt the report and recommendation, we must determine whether a review of the record evidences plain error or manifest injustice.  See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

**Discussion**

Most of the plaintiff's objections[6] are simply a restatement of facts alleged in the complaint, and do not address the legal conclusions reached by the magistrate

---

[6]Plaintiff did not file separate objections to the Magistrate Judge's report and recommendations.  Because plaintiff is filing *pro se* we will read his document as both objections to the report and recommendations and a brief in support of those objections.

judge.  Reading plaintiff's *pro se* filing liberally, we conclude that he offers objections to all of the substantive conclusion in the Magistrate Judge's report and recommendation.  We will address each of the magistrate judge's conclusions in turn.

Plaintiff's claim arises under 42 U.S.C. § 1983, which provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."  42 U.S.C. § 1983.  We will evaluate the complaint based on the legal standards developed to enforce this statute.

## A.  Immunity for Certain Defendants

The magistrate judge found that several of the defendants in this action were immune from suit under Section 1983.  We will evaluate each of those findings in turn.

## i.  Defendant Farley

The magistrate judge concluded that Defendant Farley, who was appointed plaintiff's public defender in Pike County, was not a state actor and thus ineligible for suit under Section 1983.  Plaintiff's claims of negligence, improper and unethical representation, inadequacy and failing to secure the sentence promised plaintiff all

arose from Farley's representation.  The magistrate judge also found that plaintiff

had not stated a cause of action for conspiracy against Farley under 42 U.S.C. §

1985(3) because he did not identify any specific conduct that advanced the

conspiracy or allege any discriminatory motivation on Farley's part.  Plaintiff repeats

his claims against Defendant Farley in objecting to the magistrate judge's findings.[7]

Plaintiff's attorney allegedly failed to investigate plaintiff's case and simply insisted

he was guilty, refused to provide him with a number of court documents related to

his sentencing, failed to file an appeal, improperly induced plaintiff to sign a plea

document, coerced his silence before the court prior to sentencing, denied plaintiff's

request to file motions both before and after sentencing, falsely informed him that his

sentence would be at most ninety days, failed to appear at plaintiff's first sentencing

hearing, revealed privileged lawyer-client information and never reviewed the

significance of plaintiff's prior bad acts for sentencing.

    We agree with the magistrate judge that plaintiff could not state a cause of

action against Defendant Farley in this case because only those who act under color

of state law are liable to suit under Section 1983.  "[A] public defender does not act

under color of state law when performing a lawyer's traditional functions as counsel

to a defendant in a criminal proceeding."  <u>Polk County v. Dodson</u>, 454 U.S. 312, 325

(1981).  The Third Circuit Court of Appeals, noting that "exposing court appointed

---

[7]Plaintiff includes a section entitled "Case Histories" in his objections to the report
and recommendation.  This section repeats legal standards established in various cases,
but does not explain how those cases apply to this case.

counsel to liability under § 1983 would deter many qualified, competent lawyers from accepting court appointments in criminal cases," and following the Supreme Court in Polk, has found such lawyers immune from suit under the statute.  Black v. Bayer, 672 F.2d 309, 317 (3d Cir. 1982).   This case is like, Fletcher v. Hook, where the court dismissed a case filed under Section 1983 against a lawyer for failing to prepare for a trial, neglecting to interview witnesses, neglecting to file requested motions, allowing an excessive sentence and not assisting an appeal.  Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971).  The court found that "the complaint alleges no more than a tort claim for malpractice against the attorney."  Id. at 16.

We also agree with the magistrate judge's conclusion that plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) should be dismissed with regard to Defendant Farley.  Plaintiff has not offered any allegations by which he could prove a conspiracy among the various court officers to deprive him of his rights under 42 U.S.C. § 1985(3).  See 42 U.S.C. § 1985(3) (establishing liability "[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws[.]").  A plaintiff must establish facts that demonstrate the existence of a conspiracy to prevail on such a claim: "[m]ere conclusory allegations of deprivations of constitutional rights [citations omitted] are insufficient to state a § 1985(3) claim."  D.R. v. Middle Bucks Area Vocational Tech. School, 972

11

F.2d 1364, 1377 (3d Cir. 1992); see also   Robinson v. McCorkle, 462 F.2d 111, 113

(3d Cir. 1972) ("holding that "[w]ith near unanimity, the courts have rejected

complaints containing mere conclusory allegations of deprivations of constitutional

rights protected under § 1985(3).").   Here, the defendant simply claims in a

conclusory fashion that Defendant Farley conspired with Judge Kameen and ADA

Tonkin to mislead him about his sentece, but offers no factual allegations to support

such a claim.  Therefore, even if immunity did not protect Defendant Farley from suit

under the civil rights laws, his failure to allege facts that could prove a conspiracy

would.

**ii. Judge Kameen**

The magistrate judge found that Judge Kameen enjoyed judicial immunity

from suit because the conduct plaintiff complained of occurred in Judge Kameen's

performance of his official duties.  In objecting to the magistrate judge's

recommendation, the plaintiff restates his claims against Judge Kameen.  Plaintiff

alleges that Judge Kameen refused to consider motions and other filings that plaintiff

submitted to the court, gave him a sentence that exceeded the proper guideline

range, conspired with the public defender and district attorney in a sidebar

conversation to deny plaintiff his rights, failed to follow procedural rules, did not

engage in a public plea colloquy, failed to sign court documents and neglected to

declare plaintiff's sentence in open court.  All of these allegations, plaintiff contends,

entitle him to relief under 42 U.S.C. § 1983.

We agree with the magistrate judge that plaintiff could not obtain any relief against Judge Kameen from the facts here alleged.  The United States Supreme Court has been clear that "'judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" Stump v. Sparkman, 435 U.S. 349, 355 (1978) (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)).  This doctrine aims to keep judges independent from influence and protect them from intimidation by those who would use the threat of court action to influence the outcome of a proceeding.  See Pierson v. Ray, 386 U.S. 547, 554 (1967) (finding that "it is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feeling in the litigants.  His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.").  All of the conduct alleged here against Judge Kameen, including the alleged conspiracy in which he engaged to convince plaintiff to accept an unjust sentence, occurred in the context of his duties as a judge.  Accordingly, he is entitled to absolute immunity from suit, and we will adopt the report and recommendation that we dismiss the case against Judge Kameen.

**iii.  ADA Tonkin**

The magistrate judge also recommended that we dismiss the complaint

against Assistant District Attorney Tonkin.  He found that all of plaintiff's claims against the District Attorney were intimately connected to Tonkin's performance of his official duties in the courtroom.  Conspiracy claims under 42 U.S.C. § 1985(3) should also be dismissed, the magistrate judge found, because plaintiff had not alleged any specific acts in furtherance of the conspiracy.   In disputing these findings, plaintiff again merely repeats his earlier allegations against ADA Tonkin. He claims that Defendant Tonkin denied him access to and review of court documents related to his sentencing and conspired with Judge Kameen and Attorney Farley to mislead plaintiff about the possible terms of his sentence.

A prosecutor enjoys absolute immunity from suit for conduct "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  In determining whether to grant such immunity "[c]ourts are obligated to take a functional approach to questions of absolute immunity, and should focus on 'the nature of the function performed, not the identity of the actor who performed it and evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function."  Light v. Haws, 472 F.3d 74, 78 (3d Cir. 2007). Still, "a prosecutor is absolutely immune when acting as an advocate in judicial proceedings."  Donahue v. Gavin, 280 F.3d 371, 377 n.15 (3d Cir. 2002).  Activities included under that category are "initiating and pursuing a criminal prosecution and presenting the state's case in court."  Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001).  Courts have also found that "a prosecutor's decision

whether to dispose of a case by plea bargain–because dependent on delicate judgements affecting the course of a prosecution–is protected by the doctrine of absolute prosecutorial immunity." Davis v. Grusemeyer, 996 F.2d 617, 629 (3d Cir. 1993).

We agree with the magistrate judge that ADA Tonkin is immune from suit for the conduct which plaintiff alleges caused him injury.  The activities of which plaintiff complains were all connected intimately to the sentence that plaintiff received as a result of his plea bargain, and were thus part of the "delicate judgements affecting the course of a prosecution."  Id.  An attorney attempting to dispose of a case through the negotiations surrounding a plea bargain is engaging in his prosecutorial duties as surely as an ADA deciding whether to bring an indictment or ask for a particular sentence.  Such conduct is "intimately associated with the judicial phase of the criminal process."  Imbler, 424 U.S. at 430.  While a plaintiff may have recourse in a federal *habeas corpus* suit or some other state court action for post-conviction relief based on the prosecutor's conduct in securing his guilty plea and sentence, that same plaintiff may not bring a civil action against a prosecutor for the actions that led to that complained-of sentence.  The doctrine of absolute prosecutorial immunity provides protection.  That doctrine similarly protects ADA Tonkin from suit by the plaintiff for conspiracy under Section 1985(3).  Even if plaintiff had pled the alleged conspiracy more specifically and met the standards discussed *supra*, ADA Tonkin would be immune from suit for his actions in negotiating a guilty plea.  We

15

will therefore adopt the magistrate judge's recommendation that we dismiss all plaintiff's claims against ADA Tonkin.

**iv.  Probation Officer Davis and Parole Officer Thiel**

The magistrate judge found that plaintiff could not state a claim against either Probation Officer Davis or Parole Officer Thiel.  The magistrate judge also found that because a prisoner has no constitutional right to be housed in any particular facility or program, plaintiff could not state a claim against Defendant Thiel for failing to secure him a place in any such institution.  Because the act of compiling a pre-sentence report that included recommendations for housing are judicial functions related to a judicial process, the magistrate judge concluded that Defendant Davis and Thiel both enjoyed absolute immunity for those actions.  The court also recommended dismissal of conspiracy charges under 42 U.S.C. § 1985(3) against Defendants Davis and Thiel because the plaintiff had failed to allege any overt acts in furtherance of the conspiracy.  Plaintiff again objects to these findings by repeating the allegations in his complaint.  He contends that Probation Officer Davis made use of information from plaintiff's attorney that should have been kept confidential as privileged attorney-client communications, improperly used prior bad acts in making his sentencing recommendation, attempted to induce plaintiff to admit to a crime he had not committed and recommended a sentence that was inappropriate to plaintiff's crime.  Defendant Thiel, plaintiff claims, refused to release him on the date ordered by the parole board, denied plaintiff access to an anger-

management program he had agreed to enter and did not inform him of the reasons he had been denied access to this program.

We agree with the magistrate judge that the probation/parole officer defendants are immune from suit for their participation in the preparation of the pre-sentence report.  Preparing a presentence report requires that an officer "include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence."  Pa. R. Crim. P. 702(3).  This activity is aimed at assisting the court in making a decision about the nature of the sentence, and is prepared at the direction of the court and as part of the sentencing proceedings.  See 42 Pa. C.S. § 9732 (establishing that "[t]he presentence report shall include a summary of the circumstances attending the commission of the crime, the history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation and personal habits of the defendant, any history of drug or alcohol abuse or addiction and any other matters that the person preparing the report deems relevant or that the court directs be included.").  Such presentence reports are thus "integral parts of the judicial process" and those who prepare them are "immune from suits under Section 1983."   See McArdle v. Tronetti, 961 F.2d 1083, 1084 (3d Cir. 1992) (finding that a prison doctor who prepared a diagnosis of plaintiff as a paranoid schizophrenic at the request of the court served as "an arm of the court" and was absolutely immune from suit); see also Dorman v. Higgins, 821 F.2d 133,

17

136-37 (2d Cir. 1987) (finding that a probation officer was immune from suit for "preparing and furnishing presentence reports to the court" because such action is "integrally related to the judicial process."); Peay v. Ajello, 470 F.3d 65, 68-69 (2d Cir. 2006) (finding that "Connecticut probation officers are entitled to absolute immunity from claims for damages in preparation and furnishing of presentence reports to trial courts" because of "'the desirability of having such reports provide the courts with all information that may be relevant to sentencing, and in light of the availability of procedural mechanisms for the defendant to challenge those aspects of the reports that he feels are inaccurate.'") (quoting Hili v. Sciarrotta, 140 F.3d 210, 213 (2d Cir. 1998)).  To the extent that plaintiff sues defendants for their participation in preparing his pre-sentence report, then, they are absolutely immune from suit.

We also agree with the magistrate judge that plaintiff cannot state a claim based on the failure of a parole officer to secure him a place in a particular rehabilitative program.  A prisoner does not have a constitutional right of access to particular treatment programs.  See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (finding that a prisoner could not state a due process claim either for transfer to a "substantially less agreeable prison" or because he had not been given access to prison rehabilitation programs since "Congress has given federal prison officials full discretion to control the conditions of confinement [citation omitted], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Groppi v. Bosco, 208 Fed. Appx. 113, 115 (3d Cir. 2006) (finding that

18

a prisoner "does not have a constitutional right to participate in the drug treatment program."). Here, plaintiff alleges a constitutional violation because he did not receive access to prison rehabilitation programs in which he would have liked to participate. Plaintiff could not prevail on such a claim and we will adopt the magistrate judge's recommendation that we dismiss it. Because plaintiff offers only conclusory allegations of a conspiracy under Section 1985(3) by these defendants to violate his rights, and because that alleged conspiracy apparently relates to activity for which those defendants enjoy immunity, we will likewise adopt the magistrate judge's recommendation that we dismiss plaintiff's conspiracy claim against these defendants.

**B. Claims Against Defendants Who Do Not Enjoy Immunity**

**i. Prime Care Medical, Inc.**

The magistrate judge found that plaintiff had not stated a claim against Prime Care Medical under § 1983. He concluded that Prime Care was not a "person" subject to suit under the statute, and that plaintiff had not alleged that Prime Care had any established policy or custom that led to a constitutional violation. In addition, the magistrate judge found that any claims against Prime Care for inadequate medical treatment under the Eighth Amendment should be dismissed because plaintiff had alleged only that company employees were negligent, not that they were deliberately indifferent to plaintiff's serious medical need. Plaintiff again simply repeats his earlier claims when objecting to the magistrate judge's

19

conclusions.  He alleges that a doctor at the prison refused to have him admitted to a

hospital for back pain, and that the prison placed him in segregation when he

continued to complain of this condition.  Nurses, plaintiff contends, refused to

provide him with bandages for cuts on his fingers unless he paid a $3.00 fee for that

service.  This treatment, he claims, subjected him to potential staph infections.

First, we agree that Prime Care is not liable for suit under § 1983.  To the

extent that Prime Care is an agency of the state of Pennsylvania, it is not a person

for purposes of Section 1983, and therefore not liable to suit under the statute.

Hafer v. Melo, 502 U.S. 21, 26 (1991).  In any case, the actions of Prime Care

employees cannot give rise to liability for the company, since *respondeat superior*

liability is not available under Section 1983.  See Natale v. Camden Co. Correctional

Facility, 318 F.3d 575, 584 (3d Cir. 2003).  Prime Care could be liable under that

section only if plaintiff could demonstrate "that there was a relevant . . . policy or

custom and that the policy caused the constitutional violation" plaintiff alleges.  Id.  In

Natale, the court found that the defendant health care company, which provided

prison services, could be found liable for a policy that did not require employees to

report inmate's serious medical conditions to any supervisors or to see a doctor

within 72 hours of arriving in the prison.  Id. at 584-85.  A reasonable juror could find

that policy represented "deliberate indifference to . . . inmates' medical needs."  Id. at

585.  Plaintiff here complains of failure to treat an injury, but does not point to any

policy that caused that failure on the part of defendant Prime Care.  Indeed, his

complaint is not with the policy but with his doctor's decision not to treat him.  Unlike

in Natale, plaintiff does not allege that his injury is the result of a policy or custom

consistently applied.  Plaintiff's allegation therefore amounts to an allegation of

*respondeat superior* liability based on the treatment he received from a doctor Prime

Care employed.  Prime Care cannot be liable based on such facts under § 1983.

In any case, plaintiff could not state a case against any defendants here for

violating his constitutional rights in relation to his medical care.  The Supreme Court

has established that "deliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth

Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v.

Georgia, 428 U.S. 153, 173 (1976)).  In other words, a prisoner must meet a two-part

test to claim a violation of his constitutional rights based on inadequate medical

treatment: "it requires deliberate indifference on the part of the prison officials and it

requires the prisoner's medical needs be serious."  West v. Keve, 571 F.2d 158, 161

(3d Cir. 1977).  "A 'serious' medical need may fairly be regarded as one that has

been diagnosed by a physician as requiring treatment or one that is so obvious that

a lay person would easily recognize the necessity for a doctor's attention."  Pace v.

Fauver, 479 F. Supp. 456, 458 (D. N.J. 1979).  Courts can look to the outcome of

failing to treat a medical need when determining whether that need was "serious."

See Estelle, 429 U.S. at 103-4 (holding as potentially unconstitutional denying

medical care that leads to "pain and suffering which no one suggests would serve

21

any penological purpose."). Here, plaintiff could not demonstrate deliberate indifference on the part of any defendant.

In this case, plaintiff was treated by a prison doctor. He does not name this doctor as a defendant, but instead names a variety of prison officials and the prison health-care provider, Prime Care. In cases where the plaintiff receives medical treatment from a doctor, non-medical personnel cannot be found "deliberately indifferent" to a plaintiff's serious medical needs for failing to alter the course of medical care approved of by a doctor. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (finding that two defendants who failed to respond to plaintiff's complaints about his medical treatment could not be liable, since "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."). We have already discussed why defendant Prime Care is not liable to suit in this case. The other named defendants, who did not play a role in supervising plaintiff's medical care, also cannot be held liable for medical treatment in which they played no role and for which a doctor took charge. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976) (finding that a Section 1983 claim could not be made against a prison warden when that warden had not participated in or had actual knowledge of prison guards' alleged wrongdoing and "in § 1983 suits liability may not be imposed on the traditional standards of *respondeat superior*."). Here, there is no allegation that the non-medical defendants had any reason to

22

believe plaintiff had been mistreated by medical personnel, and defendants are thus

not liable for such claims.  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)

(finding that "absent a reason to believe (or actual knowledge) that prison doctors or

their assistants are mistreating (or not treating) a prisoner, a non-medical prison

official . . . will not be chargeable with the Eighth Amendment scienter requirement of

deliberate indifference.").

Even if the defendants could be found liable for the medical care plaintiff

received, we would find no violation of his constitutional rights through this treatment.

Plaintiff's complaints about his medical treatment consist of allegations that

Defendant Prime Care charged the plaintiff a fee for a nurse referral to see a doctor;

that the doctor treating him refused to allow plaintiff treatment at a hospital despite

severe leg and back pain due to sciatic spasms; that nurses employed by Prime

Care denied him proper medical care and refused him bandages for cuts on his

fingers without authorization from a doctor.  None of these allegations amount to

conduct which we could consider deliberate indifference to a serious medical need,

even if plaintiff could avoid the problems of alleging *respondeat superior* liability.

Plaintiff may have had to pay a referral fee to see a doctor, but he saw a

doctor, making any claim of deliberate indifference to his medical needs unavailing.

See Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999) (finding that plaintiff's

seeking relief for an Eighth Amendment violation related to medical treatment "must

demonstrate (1) that the defendants were deliberately indifferent to their medical

23

needs and (2) that those needs were serious."); Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997) (finding that "[i]f a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'") (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).

Plaintiff's claim against his doctor for failing to order specific tests also does not give rise to an Eighth Amendment claim; a plaintiff cannot succeed on such a claim merely by expressing dissatisfaction with treatment or disagreeing with a doctor's conclusion. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)(holding that "mere disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation.").

Plaintiff's complaint about restricted access to bandages similarly does not amount to deliberate indifference to his serious medical need; he does not claim that he was denied treatment, but merely that he did not receive treatment from the providers he would have preferred.[8]   See McArdle v. Tronetti, 961 F.2d 1083, 1088 (3d Cir. 1992) (finding that plaintiff could not have made out an Eighth Amendment claim because he did not allege that "while in custody he had serious medical needs

---

[8]In any case, we find that cuts to the plaintiff's hands where the only treatment required was access to bandages does not constitute a serious medical need.  A serious medical need "is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Lanzaro, 834 F.2d at 347.  We do not think that a lay person would find a cut that required only a bandages for treatment to be so serious as to require a doctor's attention.

24

which were deliberately ignored."). Those arrangements constitute a policy for

delivering services, not a deliberate indifference to plaintiff's needs. Accordingly, we

will adopt the report and recommendation and dismiss plaintiff's Eighth Amendment

claims against Prime Care Medical.

**ii.  Warden Lowe**

The magistrate judge recommended that plaintiff's claims against Warden

Lowe be dismissed. No claims directly against Warden Lowe existed, and

*respondeat superior* liability is unavailable under Section 1983. Plaintiff responds to

this finding by pointing out that "it is the warden's responsibility as the superior of the

correctional facility to oversee his staff members." (Plaintiff's Objections (Doc. 8) at

6). Plaintiff's statement here provides the definition of *respondeat superior* liability.

Since we agree with the magistrate that such liability is not available under Section

1983, we agree that the claim should be dismissed. See Polk County et al. v.

Dodson, 454 U.S. 213, 325 (1981) (holding that "Section 1983 will not support a

claim based on a *respondeat superior* theory of liability.").

**iii.  Cronin, PCCF Administration Office**

The magistrate judge found that the plaintiff had attempted to assert a First

Amendment denial of access to the courts claim against Defendant Cronin based on

excessive fees charged for mailing legal papers. Since the plaintiff did not allege

that he had been precluded from filing court papers or that a claim had been

dismissed because of prison mail polices, he could not state a claim of interference

with his First Amendment rights.  Plaintiff responds with complaints about the excessive cost charged for mailing this complaint and the delays in filing that those charges caused.  He does not, however, assert that his claim was dismissed as a result of these delays.  When a prisoner alleges that prison policies have denied him access to the courts, he must "allege actual injury, such as the loss or rejection of a legal claim."  Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997).  Accordingly, we find that the plaintiff agrees that he suffered no actual prejudice from the cost of mailing, and that the plaintiff's First Amendment claim on these grounds could not succeed.   Plaintiff may have been outraged by the costs of mailing documents, but his claim was not prejudiced and he cannot obtain any relief based on any facts he could prove.

### iv.  Lt. Williams of the Pike County Correctional Facility

The magistrate judge recommends dismissal of plaintiff's claims against Defendant Williams for denying him access to court documents requested under the Freedom of Information Act.  The court found that plaintiff had not alleged any actual injury from this denial of access claim and therefore could not bring his case. Defendant objects, alleging that Lt. Williams refused to forward him court documents, provided him with irrelevant documents and conspired with Officer Thiel to prevent him from obtaining other important documents.  In this objection, plaintiff does not rectify the problem identified by the magistrate judge: he does not allege that this denial of requested documents caused him any prejudice, nor does he

26

explain any injury caused by his failure to obtain the requested materials.

We agree with the magistrate judge that plaintiff's lack of injury from not receiving these documents is fatal to his claim of a Section 1983 violation.  <u>See</u> <u>Oliver</u>, 118 F.3d at 177; <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996) (holding that "[t]he requirement that an inmate alleging a violation of [the right of access to the courts] must show an actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches.").  Here, plaintiff alleges only that he was denied access to the documents, not that denying him access to the documents caused him any harm in terms of his guilty plea or the sentence he received.  Accordingly, he cannot state a claim under Section 1983 for denial of access to the courts.  We will therefore dismiss this claim.

**Conclusion**

We will therefore adopt the magistrate judge's report and recommendation and dismiss plaintiff's complaint.  Because all of the plaintiff's claims are without a legal basis that could not be established by pleading more facts, we also find that amending the complaint would be futile, and we will dismiss the action with prejudice.  <u>See</u> <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3d Cir. 2000) (finding that "the District Court should not have dismissed the plaintiffs' claims without either granting leave to amend or concluding that any amendment would be futile.").

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD STANKOWSKI,** | : | **No. 3:06cv1582** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS E. FARLEY,** | : | |
| **RAYMOND J. TONKIN,** | : | |
| **BRIAN DAVIS,** | : | |
| **CRAIG LOWE,** | : | |
| **PRIME CARE MEDICAL, INC.,** | : | |
| **KATHY CRONIN,** | : | |
| **HON. JOSEPH F. KAMEEN,** | : | |
| **PAUL THEIL, and** | : | |
| **LT. WILLIAMS,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 17th day of May 2007:

1)  the report and recommendation of Magistrate Judge Thomas M. Blewitt

(Doc. 5) is hereby **ADOPTED**;

2)  the plaintiff's objections (Doc. 8) to the report and recommendation are

hereby **DENIED**;

3)  the plaintiff's complaint (Doc. 1) is hereby **DISMISSED** with prejudice;

4)  plaintiff's motion to proceed *in forma pauperis* (Doc. 2) is hereby

**GRANTED** solely for the purpose of our preliminary consideration of the

matter; and

5)  the Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**